David M. Ring, State Bar No. 151124
Neil K. Gehlawat, State Bar No. 289388
Afnan Shukry, State Bar No. 330522
**TAYLOR & RING, LLP**
1230 Rosecrans Avenue, Suite 360
Manhattan Beach, California 90266
Telephone: (310) 209-4100
Facsimile: (310) 208-5052

Attorneys for Plaintiff T.H.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.H., an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>G6 HOSPITALITY PROPERTY LLC,<br>d/b/a MOTEL 6,<br><br>　　　　　Defendants. | CASE NO.<br><br><br>**COMPLAINT; DEMAND FOR<br>JURY TRIAL** |

## COMPLAINT

COMES NOW the Plaintiff T.H. by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by T.H. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA"), 18 U.S.C. § 1595, as well as per any state laws as may be identified herein.

2. G6 HOSPITALITY PROPERTY LLC d/b/a Motel 6 ("Defendant") was a hotel owner, hotel operator, manager, and/or supervisor of the subject premises and subject

1

hotel located at 12266 Central Ave., Chino, California 91710 during the relevant time period, and prior thereto, and as such responsible, for the subject hotel doing business as the Motel 6 during the time period Plaintiff was sex trafficked on said premises.

3.      During the relevant time period Defendant was owner of the subject premises located at 12266 Central Ave., Chino, California 91710.

4.      Defendant is one of the largest hotel chains in the world.

5.      Defendant operates hotels in forty-nine (49) states. The brand's assets are strategically located throughout the United States – close to airports, freeways, and other thoroughfares.

6.      Sex trafficking is defined under  22 U.S.C. § 7102 (11) "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

7.      Plaintiff meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex at the subject hotel. She was psychologically and/or physically prohibited from escape from her trafficker(s).

8.      Plaintiff is a victim as set forth in the TVPRA as she was induced to engage in commercial sex by her trafficker(s) by force, threats, and coercion at the subject hotel.

9.      Plaintiff was beaten by her trafficker(s) on the subject hotel's premises during the time that she was trafficked thereon and same was a substantial factor in causing her to suffer a traumatic brain injury (T.B.I).

10.     The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act. Specifically, section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate

COMPLAINT; DEMAND FOR JURY TRIAL

district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C § 1595.

11.     As it pertains to the subject hotel, Plaintiff was sex trafficked at the aforesaid hotel by her trafficker(s) in 2014 and 2015.

12.     Defendant owns, manages, or operates more than 1,400 economy or budget motels under its Motel 6 brand.

13.     Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was trafficked.

14.     Motel 6 brand hotels are owned and operated by Defendant.

15.     Sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability to maintain some level of anonymity, privacy and discretion.

16.     At all material times, upon information and belief, Defendant had knowledge of the prevalence of sexual trafficking within the hotel industry, yet Defendant failed to prevent and/or take steps to prevent this trafficking from occurring at the subject hotel, so that Defendant could continue earning a profit.

17.      As part of their knowledge of sex trafficking, Defendant knew or should have known that sex trafficker, or 'pimps', use drugs, threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and/or children to engage in commercial sex acts against their will on hotel premises.

18.     Plaintiff's sex trafficker(s) deliberately selected Defendant's hotel as a venue to conduct their sex trafficking activities.

19.     The passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

COMPLAINT; DEMAND FOR JURY TRIAL

20.    Defendant participated in a venture by operating a hotel that rented rooms to individuals that Defendant knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

21.    While being sex trafficked at the subject hotel Plaintiff was forced by her traffickers(s) to have sex with an agent, servant, staff member, employee and/or independent contractor of defendant; more specifically, a male who plaintiff perceived to be working security at the subject hotel and, upon information and belief, that same individual who plaintiff perceived to be working security acted, at times, to guard the subject room where sex trafficking was occurring so as to permit the sex trafficking to continue unfettered.

22.    The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

23.    Defendant, as the owner, operator, manager, and/or controller of the subject hotel knew or should have known based on a combination of indicators that sex trafficking in violation of the TVPRA was occurring on the subject property as it pertained to Plaintiff.

24.    The subject hotel could deny accommodation and/or eject a guest for a number of reasons including, but not limited to: (1) guest visibly under the influence of drugs and/or alcohol; (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes; (4) guest uses hotel amenities and premises for unlawful acts; (5) guest brings in extra unregistered guests; (6) guests behavior reasonably disturbs other guests; (7) guest violates other rules set by the hotel; and (8) for other indicated reasons.

25.    Upon information and belief, defendant controlled a uniform and required reservation and marketing system, credit processing system, training and policy on brand standards, including any standards, or lack thereof, on human trafficking and/or sex trafficking, hotel furniture, amenities, food and beverages, cleanliness, and other hotel brand related policies published and communicated via property management systems with back-end management by defendant, Wi-Fi qualifications and/or Wi-Fi providers, language and policy used on internet landing pages, thresholds for cybersecurity,

4

including internet access logs, filtering and/or other guest protections, systems used to monitor customer reviews and responses, and other systems related to the daily operation at the subject Motel 6 hotel where T.H. was trafficked.

26.     Upon information and belief, before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

27.     Defendant knew or should have known that training of front-line hotel employees to be alert to red flags of trafficking activity is imperative and a best practice of hotel operating companies. Sex traffickers utilizing hotels within which to operate their illegal enterprises was well known within the industry by 2011. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

28.     At all material times, Defendant, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the subject hotel, including as to Plaintiff.

29.     At all material times, Defendant, individually and/or by their actual or apparent agents, operators, servants, and/or employees, harbored sex trafficker(s) at the subject hotel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the subject hotel.

30.     At all material times,  Defendant, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the subject hotel, failed to ensure the subject hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as sex trafficking, at the subject hotel.

31.     As a result of Defendant's failure to act and Defendant's negligent operations as outlined in the Complaint, Defendant allowed the subject hotel to be a premises for the

carrying out of sex trafficking of this particular Plaintiff in violation of the TVPRA during the time frame alleged herein.

32.    While Defendant profited from the room occupancy at the subject hotel during the time period plaintiff was trafficked, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff was being exposed to continuous and repeated dangerous conditions at the subject hotel as a sex trafficked victim that resulted in her confinement, bodily injuries, being exploited sexually, emotional distress, mental harm and anguish and conscious pain and suffering on the subject premises.

33.    Before and during this period in 2014 and 2015, Defendant was on notice of the prevalence of sex trafficking at the subject hotel as well as at similarly situated hotels within the subject location and its general vicinity, and Defendant failed to take adequate steps that would have prevented its occurrence.

34.    Before and during the relevant time period Defendant failed to implement sufficient educational and training programs on sex trafficking within their business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

35.    During the relevant time period of 2014 and 2015, Defendant, its agents, servants, staff, employees and/or independent contractors, knew or should have known that Plaintiff was being trafficked at the subject hotel, in violation of the TVPRA, and Defendant, its agents, servants, staff, employees and/or independent contractors, failed to act upon the obvious and overt signs alerting them to the sex trafficking crimes taking place at this subject hotel pertaining to Plaintiff.

36.    Plaintiff brings this action for damages against Defendant. Defendant, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the

foregoing, from sex trafficking on the subject premises in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

37.    Had the Defendant timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

38.    Defendant knowingly benefitted financially by receiving things of value by means of operating a hotel and renting rooms to trafficker(s) (or members of their entourage) and said Defendant knew or should have known said trafficker(s) were engaged in an act in violation of the subject TVPRA chapter pertaining to Plaintiff.

39.    Defendant, its agents, servants, staff, employees and/or independent contractors, knew or should have known of the ongoing sex trafficking that had been conspicuously occurring at the subject hotel including as to the Plaintiff herein.

40.    In this case, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker(s).

41.    Operating a hotel and renting out rooms is an enterprise involving risk or potential profit.

42.    Operating the subject hotel and renting out rooms to plaintiff's trafficker(s) was an enterprise involving risk or potential profit.

43.    As a direct and proximate result of Defendant's willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent sex trafficking at the subject hotel, the Plaintiff was drugged, malnourished, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at this subject hotel.

44.    Plaintiff is a victim as set forth in the TVPRA as during relevant time period herein, and at the subject premises, she was induced to engage in commercial sex by her trafficker(s) by fraud, force and coercion at the subject hotel.

45.    Due to the failure of Defendant to timely and properly embrace and implement anti-trafficking policies and practices, Plaintiff was repeatedly abused, victimized, and trafficked for sex. Defendant ignored open and obvious indications of sex trafficking that enabled Plaintiff's trafficker(s) to use the subject hotel to traffic Plaintiff and likely other victims without repercussion.

## JURISDICTION AND VENUE

46.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely the TVPRA 18 U.S.C. § 1595,  and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is, "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

46.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this district pursuant to 28 U.S.C § 1391(b).

## PARTIES

47.    Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained in this Complaint to protect the privacy and identity of Plaintiff who incurred injuries and damages when being exploited by sex traffickers on the premises of the subject hotel. Nationwide, similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

48.    Plaintiff is currently a resident of the State of Idaho.

49.    Plaintiff was born in 1983.

50.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

COMPLAINT; DEMAND FOR JURY TRIAL

51.    As it pertains to this Defendant, Plaintiff was sex trafficked at the "subject hotel" located at 12266 Central Ave., Chino, California 91710 in 2014 and 2015.

52.    At all times relevant and material, Defendant G6 HOSPITALITY PROPERTY LLC was doing business as Motel 6 located at 12266 Central Ave., Chino, California 91710, and, upon information and belief, were authorized to do, licensed to do, and were doing business in the State of California offering the subject hotel as a place of public lodging.

53.    At all times relevant and material to this complaint, Defendant was, by and through their agents, servants, staff, independent contractors and/or employees, the owner, operators, managers, supervisors, controllers and innkeepers of the hotel, doing business as, Motel 6 at 12266 Central Ave., Chino, California 91710.

## SEX TRAFFICKING UNDER FEDERAL LAW

54.    The requirements for liability under TVPRA, 18 U.S.C. § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity must "knowingly benefit, financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

55.    Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as, "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

56.    Sex trafficking is prohibited by federal criminal law under the already existing crimes 18 U.S.C. § 1589 and §1590.

57.    Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

58.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion or from a person under the age of 18 years old are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

59.     Due to the failure of the hospitality industry, and the defendant in particular, to address the issue, hotels are the venue of choice for sex trafficking as occurred with the subject hotel herein.

### DEFENDANT'S DUTY OF CARE TO PATRONS

60.     In the State of California, hotels are innkeepers and owe patrons a special duty of care.

61.     The subject hotel is a public lodging establishment.

62.     Defendant operated, managed, supervised, controlled, leased and/or is otherwise responsible for the subject hotel for the purpose of making a profit for the relevant time period in question. The premises of the subject hotel includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, Defendant had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the subject hotel.

63.     Aside from their special duty to patrons and guests at the subject hotel, such as Plaintiff at all material times, Defendant had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

64.     At all relevant times, Defendant was aware of and/or should have been aware of their roles and responsibility in sex trafficking.

### A.  DEFENDANT'S KNOWLEDGE OF THE PREVALENCE OF SEX TRAFFICKING AT THE SUBJECT HOTEL AND THEIR PARTICIPATION.

10

65.    At all relevant and material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel, knew or should have known that their hotel offered a level of anonymity and a level of non-traceability, making them ideal venues for crime, drugs and sex trafficking in particular.

66.    At all relevant and material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using the subject hotel as a hub for their sexual trafficking operations.

67.    At all relevant and material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that trafficker(s) were harboring victims, including Plaintiff, at the subject hotel, and were forcing them to engage in sex services, wherein buyers ("Johns") would come to the hotel to purchase sex.

68.    At all relevant and material times, Defendant, its agents, servants, staff, employees and/or independent contractors, witnessed manifestations of sex trafficking and commercial exploitation taking place at the subject hotel through various indicators that trafficker(s) and their victims exhibit during their stay at the subject hotel.

69.    At all relevant and material times, Defendant was on notice of repeated incidences of sex trafficking occurring on the subject hotel premises yet they failed to take the necessary actions to prevent sex trafficking from taking place and in particular, the sex trafficking of Plaintiff.

70.    At all relevant and material times, Defendant knew or should have known that "pimps," "Johns," and/or sex trafficker(s) used the subject hotel to facilitate the trafficking of women for sex, including but not limited to Plaintiff.

71.    Defendant had the knowledge, ability, and the greatest reach to prevent, identify and thwart sexual exploitation, including that of Plaintiff, at this subject hotel.

COMPLAINT; DEMAND FOR JURY TRIAL

72.     Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel operators, managers, supervisors, controllers and/or staff, including Defendant, to implement effective safeguards to mitigate the risk that sex trafficking will occur at or involve their premises and personnel, including the subject hotel.

73.     Prior to the trafficking of Plaintiff voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to Defendant, individually and/or through their actual or apparent agents, servants, employees and/or staff in every position, to help them identify the signs of sex trafficking and stop it.

74.     At all relevant and material times, Defendant had a legally imposed duty to ensure that their hotel had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

75.     At all material times, the agents and/or employees of Defendant were uniquely situated to identify and report suspicious activity on their hotel properties because from check-in to check-out there were numerous indicators of the subject sex trafficking that was occurring of this Plaintiff at the subject hotel.

76.     Defendant and its agents, servants, staff, employees and/or independent contractors, however, failed to take steps to report the suspicious and obvious trafficking indicators at the subject hotel.

77.     Had Defendant properly trained their staff, agents and/or employees and/or implemented an anti-sex trafficking protocol at this subject hotel and/or provided other reasonable security measures, they would have prevented, and/or mitigated, the trafficking of persons at this subject hotel and in particular this Plaintiff.

78.     Signs of sex trafficking at a hotel, and signs which were occurring at Defendant's hotel, in particular as it pertains to this Plaintiff, include, but are not limited to, those "red flags" identified in Count 1 below.

12

79. Defendant, individually and by and through their actual or apparent agents, servants, employees independent contractors, and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotel that indicated the presence of sex trafficking in general, and in particular to this Plaintiff during the relevant time period alleged herein, including but not limited to:

    a. Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b. Persons lacking freedom of movement or being constantly monitored;

    c. Victim(s) dressed in a sexually explicit manner;

    d. Persons requesting room or housekeeping services (additional towels, new linens, etc.), but, at times, denying hotel staff entry into the room;

    e. Few or no personal possessions during check in and within the room;

    f. Sex paraphernalia in rooms (condoms, lubricant, lotion);

    g. Large amounts of e.g. used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels, and other sex-related items in the hotel rooms;

    h. Payments for the rooms in cash, or cash substitutes such as a prepaid credit card;

    i. Checking in to hotel with local I.D./local residence;

    j. Victim(s)' and/or Plaintiff's physical appearance (malnourished, bruised, beaten, drugged, and inappropriate attire);

    k. A continuous procession of men (sex buyers and/or "Johns") entering and leaving room(s) where sex trafficking was occurring;

    l. Excessive requests for sheets, cleaning supplies, towels, and room service;

    m. Red flags identified in Count 1 below; and

    n. Other red flags that Defendant knew and/or should have known of.

80. Defendant could have and should have adopted policies and procedures related to sex trafficking and made anti-sex trafficking resources readily available to their actual or

COMPLAINT; DEMAND FOR JURY TRIAL

apparent agents, servants, employees and/or staff, but, upon information and belief, they did not.

81.    Defendant could have and should have mandated that all of their actual or apparent agents, servants, employees and/or staff complete anti-sex trafficking training, but, upon information and belief, they did not properly do so.

82.    Defendant could have and should have encouraged all of their actual or apparent agents, servants, staff, employees and/or staff to report suspected incidents of sex trafficking when observed at the subject hotel, but, upon information and belief, they did not.

83.    Defendant could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of sex trafficking at the subject hotel, but, upon information and belief, they did not.

84.    Defendant could have and should have posted anti-sex trafficking awareness and informational materials in common areas and guest rooms at the subject hotel, to help eliminate sex trafficking, but, upon information and belief, they did not properly do so.

85.    Defendant failed to take effective preventative measure at the subject hotel, in spite of the indicia of sex trafficking and effective preventative measures being widely known and available to them; they simply elected not to properly engage in preventative policies and practices.

86.    The motivation behind Defendant's ongoing willful blindness and ongoing failure to act was, in whole or in part, for Defendant's financial benefit.

87.    By repeatedly failing to heed the call or repeatedly failing to execute their own policies, Defendant facilitated the sexual trafficking crimes at the subject hotel and in particular the victimization of this Plaintiff.

88.    Due to Defendant's actions, failures to act, and/or omissions Defendant facilitated and enabled sex trafficker(s) to use the subject hotel for sex trafficking of women and this particular Plaintiff.

14

89.    Defendant's failure to prevent and stop sex trafficking and sexual exploitation at the subject hotel, makes them accountable to victims of sex trafficking, including the Plaintiff.

**B. THE SEX TRAFFICKING OF PLAINTIFF AT THE SUBJECT HOTEL**

90.    In 2014 and 2015 Plaintiff was sex trafficked at the subject hotel by her trafficker(s).

91.    At all times relevant and material to this Complaint, Defendant, individually and/or by and through their actual or apparent agents, servants, staff, employees and/or independent contractors, rented rooms at the subject hotel to Plaintiff's sex trafficker(s) and Defendant financially benefitted from same.

92.    At all times material to this Complaint, Defendant received monetary payment for the rental of rooms at the subject hotel, including the room(s) where Plaintiff was being trafficked.

93.    The Plaintiff was forced to engage in sexual activities within and on the premises of the subject hotel, including within the rooms rented to and/or by Plaintiff's trafficker(s), that was at all relevant times owned, operated, managed, supervised, controlled by Defendant.

94.    As it pertains to this Defendant, Plaintiff was forced to perform numerous commercial sex acts per day while at the subject hotel. Force means any form of violence compulsion or restraint exercised upon or against a person. Force can also effected through power or pressure which need not necessitate physical components.

95.    Upon information and belief, while at the subject hotel, Plaintiff was forced to engage in frequent use of drugs and/or alcohol and would exhibit behavior consistent with someone who was under the influence, or near overdose, of same.

96.    Defendant, individually and/ or by their actual or apparent agents, servants, staff, employees, and/or independent contractors, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as Plaintiff's sex trafficker(s), who were engaged in the commercial sex trade.

15

97.    During the time frame that Plaintiff was sex trafficked at this subject hotel, Defendant's agents, servants, staff, employees and/or independent contractors interacted with Plaintiff, observed Plaintiff and had knowledge, or should have had knowledge, that Plaintiff was staying at the hotel for an extended period of time and that during that time she was the victim of sex trafficking in violation of the TVPRA.

98.    At all relevant and material times, Defendant, individually and/or by and through their actual or apparent agents, servants, staff and/or employees, was uniquely positioned to observe the manifestations or indications of sex trafficking within the subject hotel.

99.    Had the subject hotel staff been properly trained by Defendant and/or anyone acting on their behalf regarding the obvious and overt signs of sex trafficking, they would have observed the obvious and overt signs of sex trafficking at the subject hotel, including as they applied to Plaintiff, and these signs would have been recognized and, therefore, reported.

100.   Defendant exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of the subject hotel.

101.   Defendant failed to implement and enforce their own policy or policies and protect Plaintiff from being sex trafficked.

102.   Defendant knew or should have known that the subject hotel where Plaintiff was trafficked was an area known for incidences of crime and prone to sex trafficking activity on and around the subject hotel premises, including when Plaintiff was trafficked.

103.   Despite having evidence of sex trafficking that occurred at the subject hotel, Defendant failed to stop these actions.

104.   Defendant could have prevented sex trafficking, including but not limited to, by: (i) distributing information to assist their agents, employees, staff in identifying sex trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is sex trafficking and a national hotline; (iii) providing a process for reporting and escalating sex trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to

handling a situation involving sex trafficking; (v) providing new hire orientation on anti-sex trafficking measures, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their staff through webinars, seminars, conferences, and online portals on how to respond to suspected sex traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on sex trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery; and (ix) ensuring strict security protocols, credit cards only, and no loitering.

105.   Defendant failed to take adequate steps to prevent sex trafficking at the subject hotel where Plaintiff was trafficked.

106.   The acts and/or omissions of Defendant served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking and in particular this Plaintiff.

## C. DEFENDANT KNOWINGLY BENEFITTED FROM PLAINTIFF'S SEX TRAFFICKING

107.   At all relevant and material times, Defendant received money and financially profited from the forced commercial sex acts being performed by Plaintiff that were being carried out on the premises of the subject hotel.

108.   Defendant knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the subject hotel through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

109.   Despite knowledge, constructive knowledge, and/or general awareness of the signs of sex trafficking, Defendant, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the sex trafficking of Plaintiff.

17

110.   By harboring Plaintiff's sex trafficker(s) and their sex trafficked victims at the subject hotel, Defendant, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the sex trafficking of Plaintiff.

111.   Accordingly, Defendant continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit Plaintiff, from being a continuous victim of sex trafficking.

///

///

///

///

18

## D. DEFENDANT'S WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTEL

112.   Plaintiff was a hotel guest/invitee at the subject hotel and Plaintiff was seriously and permanently injured as a direct result of the Defendant's acts and omissions, in that Defendant permitted, harbored and facilitated illegal sex trafficking to take place at the subject hotel whereby the Plaintiff  was coerced and forced to engage in sex,  beaten, manipulated with drugs and enslaved.

113.   More specifically, at all material times, in the quest for profits, the acts and/or omissions of Defendant caused Plaintiff to suffer physical, mental and emotional injuries and conscious pain and suffering.

114.   The injuries and/or harms that Plaintiff suffered as a result of Defendant's negligent operation of the subject hotel and Defendant's failure to make the hotel premises safe, are of a permanent and/or continuing nature.

115.   Defendant, as hotel operators, owners, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like Plaintiff, to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as Plaintiff, from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotel's common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.

116.   Defendant failed in their duties to Plaintiff to provide proper security and other timely and proper precautions to prevent the criminal acts upon her by third parties on a regular basis.

117.    More so, while being sex trafficked at the subject hotel Plaintiff was forced by her traffickers(s) to have sex with an agent, servant, staff member, employee and/or independent contractor of defendant; more specifically, a male who plaintiff perceived to be working security at the subject hotel and upon information and belief that same individual who plaintiff perceived to be working security acted, at times, to guard the

COMPLAINT; DEMAND FOR JURY TRIAL

subject room where sex trafficking was occurring so as to permit the sex trafficking to continue unfettered.

118.   Defendant should have taken steps to prevent sex trafficking at the subject hotel in accordance with applicable Federal, State and local laws and guidelines.

119.   Accordingly, because sex trafficking and other illegal activity associated therewith was foreseeable, Defendant had a duty to take adequate security or remedial measures to protect their guests from criminal activity, including the Plaintiff herein.

120.   By failing to act, Defendant, by and through their actual or apparent agents, servants, s and/or employees, allowed Plaintiff to be harbored and confined for sexual acts while collecting rental fees thereon.

121.   As a further direct and proximate result of Defendant's conduct and lack of due and reasonable care, Plaintiff has incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and/or (4) transportation costs to and from various physicians' offices and hospitals.

122.   As a further direct and proximate result of Defendant's conduct and lack of due and reasonable care, the Plaintiff has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which Plaintiff should also be compensated by Defendant.

## CAUSES OF ACTION

### A.    COUNT I - VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

123.   Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above captioned Defendant.

124.   In support of her action against Defendant, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

125.   Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

COMPLAINT; DEMAND FOR JURY TRIAL

126.   As it pertains to this Defendant, Plaintiff was sex trafficked at the subject Motel 6 located at 12266 Central Ave., Chino, California 91710 in 2014 and 2015.

127.   Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. *See* 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers and/or the beneficiaries of the sex trafficking crime. *See* 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

128.   In this matter, Plaintiff was a victim of sex trafficking on the premises of the subject hotel.

129.   Defendant rented room(s) to individual(s) it knew or should have known were engaged in sex trafficking of women and of Plaintiff in particular.

130.   Defendant knowingly benefited financially or by receiving anything of value from participation in a venture which said Defendant knew or should have known has engaged in an act in violation of this chapter.

131.   As to Plaintiff's TVPRA action as against the above captioned Defendant, Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

21

132.   Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant knew or should have known were involved in sex-trafficking, and in particular the sex trafficking of Plaintiff.

133.   The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

134.   Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented for Plaintiff and her trafficker at the subject hotel. In addition, Defendant received other financial benefits including but not limited to food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

135.   Upon information and belief, Defendant monitors and reviews reports of  criminal activity, including through online reviews, at its branded properties.

136.   Upon information and belief, Defendant reviews and monitors complaints at its branded hotel properties and charges properties a Guest Intervention Fee if the 12-month complaint rate is above a certain number.

137. Upon information and belief, Defendant provides a platform for brand employees to report, at their discretion, to the brand suspicious activity occurring at their branded hotel. Defendant controls and houses this collective data from all branded properties.

138.   Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff due to the many red flags then and there existing, including but not limited to:

       a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked women.

       b.   Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

       c.   Suspicious people coming in and out of the rented room(s).

COMPLAINT; DEMAND FOR JURY TRIAL

d. Trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing.

e. The trafficked drug impaired women on the hotel premises.

f. The trafficked alcohol impaired women on the hotel premises.

g. The trafficked behavior impaired women on the hotel premises.

h. The trafficked speech impaired women on the hotel premises.

i. The trafficked hygiene impaired women on the hotel premises.

j. The trafficked women with visible bruises (from being hit by trafficker) on the hotel premises.

k. The trafficker, trafficker's entourage, and trafficked women standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the trafficker's entourage, and the trafficked women. When a "John" would come to the room, everyone but the "John" and the trafficked woman would leave the room, so there would be a number of people including drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, with bruises loitering outside the room.

l. Inside the hotel room there was a suspicious bunch of people and suspicious items including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m. Smoking in room made noticeable odor which would permeate outside room.

n. Screaming and/or load noise emanating from the subject room where trafficking was occurring.

COMPLAINT; DEMAND FOR JURY TRIAL

o. The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

p. Trafficker speaking to women in aggressive/abusive manner – which should have raised alarms.

q. Staying at hotel with no luggage/suitcases or few personal belongings.

r. Plaintiff's trafficker was a pimp and his general conduct on hotel grounds was not discreet. As Plaintiff's trafficker was frequently on drugs and exhibited violent and aggressive behavior.

s. Trafficker monitoring hotel hallway or door of room or walking hotel perimeter.

t. Other commonly known sex trafficking red flags which the above captioned Defendant would have been aware of had anti-trafficking measures been timely and properly implemented at the hotel.

139. Plaintiff interacted with defendant's staff and employees while exhibiting above signs and characteristics of trafficking set forth in the above paragraph.

140. Defendant's agents, servants, staff, employees and/or independent contractors witnessed and observed on a regular and frequent basis above signs, indicators and characteristics of sex trafficking as set forth in paragraph 135 above.

141. While being sex trafficked at the subject hotel Plaintiff interacted with the hotel's manager "Alan" while signs and characteristics of trafficking set forth above were occurring.

142. While being sex trafficked at the subject hotel Plaintiff was forced by her trafficker(s) to have sex with an agent, servant, staff member, employee and/or independent contractor of defendant; more specifically, a male who plaintiff perceived to be working security at the subject hotel.

143. While being sex trafficked at the subject hotel Plaintiff was forced by her trafficker(s) to have sex with an agent, servant, staff member, employee and/or

24

independent contractor of defendant; more specifically, a male who plaintiff perceived to be working security at the subject hotel and, upon information and belief, that same individual who plaintiff perceived to be working security acted, at times, to guard the subject room where sex trafficking was occurring so as to permit the sex trafficking to continue unfettered.

144.   Plaintiff's trafficker developed relationships with some of the subject hotel's staff and employees and had illicit arrangements with them to conceal the ongoing sex trafficking occurring on the hotel premises including as to the Plaintiff.

145.   Upon information and belief, Plaintiff trafficker(s) had hotel employee(s) acting as lookouts for Plaintiff's trafficker(s) and informing the trafficker(s) of police activity.

146.   Defendant was participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation by repeatedly renting room(s) at subject hotel to people Defendant knew or should have known were engaged in sex trafficking.

147.   Defendant actively participated in this illegal endeavor by knowingly or negligently providing lodging in which to harbor Plaintiff while she was being sex trafficked.

148.    A continuous business relationship existed between the subject hotel, its employees and staff, and Plaintiff's trafficker(s) in that the hotel repeatedly rented rooms to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

149.   Plaintiff was forced to perform commercial sex acts in the room(s) at the subject hotel. Accordingly, the traffic and parade of men coming in and out of her room was tremendous. This procession of unregistered male guests would have been open and obvious to anyone working at the subject hotel.

150.   Plaintiff was sold via commercial sex transactions at the Defendant's subject hotel property, where force, fraud, and/or coercion were used against her, while Defendant turned a blind eye and continued to benefit.

151.   Defendant profited from the sex trafficking of Plaintiff and knowingly or negligently aided, enabled, and facilitated the sex trafficking of Plaintiff. Defendant rented rooms to Plaintiff's trafficker(s) when they knew, or should have known, that her trafficker(s) was using their room to subject Plaintiff to repeat sexual exploitation and sexual servitude.

152.   Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking and/or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including but not limited to being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple "Johns" per day while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by her including but not limited to her causally related PTSD and T.B.I.

153.   Upon information and belief, Plaintiff was advertised for sex on websites known for trafficking, whereby Defendant provided open access to these known websites, as well as WiFi access, permitting trafficker(s) and buyers to enable, facilitate, and otherwise assist in the harboring of Plaintiff for the purpose of sex trafficking.

154. For all the reasons set for above, defendant knew or should have known that sex trafficking was occurring on its premises in 2014 and 2015 in violation of the TVPRA as it pertained to the Plaintiff and furthermore Defendant had actual and/or constructive notice of sex trafficking occurring at other of defendant's properties that either pre-dated the subject trafficking of T.H., and/or occurred at or about the time that T.H. was trafficked at the subject hotel, for example, but not limited to.:

COMPLAINT; DEMAND FOR JURY TRIAL

i.   In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio. (See, Rider at 1.)

ii.  In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls forsex.  (See, Rider at 2.)

iii. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois. (See, Rider at 3.)

iv.  Police rescued an eighteen (18) year old girl from a sex trafficker in February2012, at a Motel 6 in Portland, Oregon. (See, Rider at 4.)

v.   The FBI investigated and arrested several individuals in December 2012, forthe victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama. (See, Rider at 5.)

vi.  The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6  in Anaheim, California. (See, Rider at 6.)

vii. In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine. (See, Rider at 7.)

viii. Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland. (See, Rider at 8.)

ix.  The FBI busted a sex trafficking ring operating out of a Motel 6 in San Antonio, Texas in September 2013. (See, Rider at 9.)

x.   In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013, and charged with sex trafficking of two young women. (See, Rider at 10.)

xi.  Police investigated a sex trafficker in March 2014 and ultimately charged

COMPLAINT; DEMAND FOR JURY TRIAL

himfor his crimes including, but not limited to, selling a seventeen (17) year old girl for sex out of a Motel 6 in Roseville, Minnesota. (See, Rider at 11.)

xii. In May 2014, two (2) traffickers were arrested at a Motel 6 in Monterey, California after a twenty-one (21) year old woman escaped from their captivity. (See, Rider at 12.)

xiii. In the summer of 2014, two (2) girls ages fifteen (15) and sixteen (16) were taken from a children's shelter by a sex trafficker and trafficked out of a Motel 6 in Cutler Bay, Florida. (See, Rider at 13.)

xiv. A Las Vegas man was charged with sex trafficking two (2) victims, including a seventeen (17) year old girl, in January 2015, out of a Motel 6 in Rapid City, Nevada. (See, Rider at 14.)

xv. In February 2015, two (2) men were arrested for sex trafficking a fourteen (14) year old girl at a Motel 6 in Seekonk, Rhode Island. (See, Rider at 15.)

xvi. A local law enforcement investigation resulted in the rescue of a fifteen (15) year old runaway in February 2015, from a Motel 6 near the Oakland, California airport where she was being sex trafficked. (See, Rider at 16.)

xvii. In North Charleston, South Carolina, a seventeen (17) year old girl was rescued in March 2015 from a Motel 6 by special agents from the United States Department of Homeland Security. The girl was sold for sex, beaten, and starved by a sex trafficker. (See, Rider at 17.)

xviii. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas. (See, Rider at 18.)

xix. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island. (See, Rider at 19.)

xx. Over a fourteen (14) month period ending in approximately April 2015, at the  same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking. (See, Rider at 20.)

xxi. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl. (See, Rider at 21.)

xxii. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington. (See, Rider at 22).

xxiii. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape. (See, Rider at 23).

xxiv. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a   Motel 6 in Pismo Beach, California. (See, Rider at 24).

xxv. In November 2015 a man was arrested at a Motel 6 in Ventura, California and was criminally charged with sex trafficking a fifteen (15) year old girl who was found with him. (See, Rider at 25).

155.  Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including, but not limited to, personal injuries, physical injuries, prolonged victimization while being sex trafficked, Traumatic Brain Injury secondary to beatings from her trafficker(s) on the premises, and significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. These injuries led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning

156.  As a direct and proximate result of Defendant's multiple failures to act, mandate, establish, execute anti-trafficking measures and/or modify their anti-trafficking efforts at

COMPLAINT; DEMAND FOR JURY TRIAL

their hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel.

157.    As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant for more than $75,000, as identified in each of the above-referenced claim(s) and Count(s) and as follows:

    a)    All available compensatory damages for the described losses with respect to each cause of action including, but not limited to, prolonged and horrific conscious pain and suffering and permanent residual injuries including but not limited to P.T.S.D. and T.B.I.;

    b)    Past and future medical expenses, as well as the costs associated with past and future life care;

    c)    Past and future lost wages and loss of earning capacity;

    d)    Past and future emotional distress;

    e)    Consequential and/or special damages;

    f)    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g)    All damages allowed under TVPRA including but not limited to attorneys fees and costs.

    h)    Disgorgement of profits obtained through unjust enrichment;

    i)    Restitution;

    j)    Reasonable and recoverable attorney's fees;

    k)    Punitive damages with respect to each cause of action;

l)   Costs of this action; and

m)  Pre-judgement and all other interest recoverable.


### THE PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: September 29, 2023                    **TAYLOR & RING**

By: _____

David M. Ring
Neil K. Gehlawat
Afnan Shukry
Attorneys for Plaintiff

31

RIDER

1. Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.
2. Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html.
3. Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.
4. Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sextrafficking-two-victims.
5. FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.
6. Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784
7. Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.
8. Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.
9. Stephanie Serna, *Sex Trafficking Ring Busted At Motel 6* (Sep. 17, 2013, 6:21 PM), https://www.ksat.com/news/2013/09/17/sex-trafficking-ring-busted-at-motel-6/.
10. *UPDATE: Man Arrested For Sex Trafficking*, WRDW ON YOUR SIDE, (Oct. 3, 2013, 7:30 AM), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.
11. *Man, 25, Is Accused Of Trafficking Teens*, TWIN CITIES PIONEER PRESS (Jun. 5, 2014, 10:35 AM), https://www.twincities.com/2014/06/05/man-25-is-accused-of-trafficking-teens-2/.
12. Felix Cortez & Amy Larson, *Monterey Police: 2 Human Sex Traffickers Arrested After Victim Escapes Motel*, KSBW8 ACTION NEWS (May 9, 2014, 5:30 PM), https://www.ksbw.com/article/monterey-police-2-human-sex-traffickers-arrested-after-victim-escapes-motel/1054172.

32

13. David Goodhue, *Next Stop For Man Accused Of Sex Trafficking 2 Teens: Federal Court*, MIAMI HERALD (Sep. 2, 2015), https://www.miamiherald.com/news/local/news-columns-blogs/deadline-miami/article33360843.html.

14. *Las Vegas Man Charged With Human Trafficking In Rapid City*, ARGUS LEADER (Jan. 17, 2015), https://www.argusleader.com/story/news/crime/2015/01/17/las-vegas-man-charged-human-trafficking-rapid-city/21922915/.

15. Stephen Peterson, *RI Man Gets Jail In Sex-Trafficking Case Involving Seekonk Motel*, THE SUN CHRONICLE (Oct. 28, 2016), https://www.thesunchronicle.com/news/local_news/ri-man-gets-jail-in-sex-trafficking-case-involving-seekonk/article_d7a25494-9d21-11e6-8f94-63e5c74facb3.html.

16. Emilie Raguso, *Woman Charged In Berkeley Teen Sex Trafficking Case*, BERKELEYSIDE (Dec. 8, 2015), https://www.berkeleyside.com/2015/12/08/woman-charged-in-berkeley-teen-sex-trafficking-case.

17. Melissa Boughton, *Police Say Teen Starved, Beaten At North Charleston Hotel; Man Arrested In Sex-Trafficking Case*, THE POST & COURIER (Mar. 2, 2015), https://www.postandcourier.com/archives/police-say-teen-starved-beaten-at-north-charleston-%20motel-man/article_032153ee-fcb6-5333-9182-926a7f43dfbf.html

18. Lindsay Bramson, *Local Teen Saved From Sex Slavery; Two Charged*, KXAN AUSTIN (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

19. Amanda Milkovits, *Massachusetts Man Accused Of Trafficking Teen In Warwick Motel*, NEWPORTRI.COM (Mar. 24, 2015, 12:01 AM), https://www.newportri.com/article/20150324/ NEWS/150329666.

20. Sarah Kaplan, *Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police*, THE WASHINGTON POST (Apr. 28, 2015), https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/.

21. Andrea Fisher, *Woman Caught Up In Human Trafficking Ring Pleads Guilty*, GREAT FALLS TRIBUNE (Aug. 29, 2016, 10:35 AM), https://www.greatfallstribune.com/story/news/ local/2016/08/29/woman-caught-human-trafficking-ring-pleads- guilty/89566374/.

22. Diana Hefley, *County Investigating 45 Ongoing Human Sex Trafficking Cases*, HERALDNET (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

33

23. *Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen*, NEWSMISSISSIPPI (Nov. 7, 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

24. Matt Fountain, *Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Will Stand Trial*, THE TRIBUNE (May 5, 2016, 10:05 AM), https://www.sanluisobispo.com/news/local/article75832962.html.

25. *Fresno Man Sentenced To Prison For Pimping, Human Trafficking In Ventura County*, VENTURA COUNTY STAR (Apr. 26, 2016, 3:21 PM), https://www.vcstar.com/story/news/local/communities/ventura/2016/04/26/fresno-man-sentenced- to-prison-for-pimping-human-trafficking-in-ventura-county/88714698/.

COMPLAINT; DEMAND FOR JURY TRIAL